**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4022**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

ROBERT BLACK, a/k/a Kareem Banks, a/k/a Nino Black, a/k/a Black,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:16−cr−00054−DCN−9)

Argued:  December 8, 2021                          Decided:  April 26, 2022

Before WILKINSON, KING, and DIAZ, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED:**   Howard Walton Anderson III, LAW OFFICE OF HOWARD W. ANDERSON III, LLC, Pendleton, South Carolina, for Appellant.  Andrew Robert de Holl, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**  M. Rhett DeHart, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Robert Black appeals his sentence for conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c). Black pleaded guilty, and the district court sentenced him to 240 months in prison with a lifetime of supervised release. He now contends, among other things, that the district court procedurally erred by failing to address his nonfrivolous mitigation evidence. We agree. For that reason alone, we vacate Black's sentence and remand for resentencing. Because Black seeks no other relief, we decline to reach his remaining claims.

I.

A.

A grand jury indicted Black and nine other defendants for their roles in a multistate sex-trafficking operation. Black pleaded guilty to one count of conspiracy to commit sex trafficking, which included trafficking minors.

Black's presentence investigation report described his disturbing abuse of five victims, including K.S. K.S. was only 16 when Black began trafficking her. Over three years, he beat her, forced her to engage in commercial sex acts, fed her powder cocaine, impregnated her, and then forced her to have a clandestine abortion. The evidence of Black's crimes against K.S., another minor, and three adults were detailed in codefendant and victim statements, police reports, online advertisements from escort websites, and social media posts (including Black's own).

The presentence investigation report calculated base offense levels for each of Black's five victims. *See* U.S.S.G. §§ 2G1.1(d), 2G1.3(d) (instructing that, when an offense under the Guideline involves multiple victims, we calculate offense levels as though the prohibited sexual conduct against each victim "had been contained in a separate count of conviction"). His total offense level was 35—the product of the greatest victim-specific offense level (34 as to K.S.), a four-level enhancement for the number of victims, and a three-level reduction for acceptance of responsibility. With a criminal history category of III, Black's advisory Guidelines range was 210 to 262 months' imprisonment. The report also recommended eleven special supervised-release conditions to accompany the mandatory and standard conditions.

B.

Before sentencing, Black filed a memorandum arguing for a downward variance. Black first posited that his criminal history category of III "substantially overstate[d]" his past crimes. J.A. 54. His record consisted of low-level drug offenses, misdemeanors, and probation violations.

Black's memorandum then detailed his troubled childhood. Black grew up in a broken home plagued by addiction, without parental guidance or support. His parents were alcoholics. His father was rarely home, and when he was home, he would beat Black. Black "struggled to have the bare necessities of food and second hand clothing." J.A. 58. And "[a]fter his father moved out completely, he and his siblings lived on welfare." *Id*.

Black's sister served a maternal role because of their mother's alcoholism. But as a young man, he saw his sister prostitute herself to support the family and become addicted

3

to crack cocaine and other drugs. His sister's behavior turned "irrational" and "frightening," and she would take things from the home to sell for drugs. *Id.* Because of this, Black witnessed social services remove his nephew (and codefendant), Tremel Black, from their home and place him in foster care.

Black fared no better as he entered adulthood. He dropped out of school in tenth grade after enduring years of bullying. At fifteen, he left home and lived on the streets. He was "depressed" and "hopeless." J.A. 59. His "poverty, loss of his family and lack of [life] skills" "overwhelmed" him. *Id.* Eventually, he turned to drugs and alcohol, met several women, and had four children.[1]

Black's sentencing memorandum also described his efforts at rehabilitation. While awaiting sentencing, Black pursued mental health treatment and studied to obtain his GED. He participated in group counseling, and his counselors said he was committed to the group's work. He also completed several programs, including the Turning Leaf Program and the Mental Health Group – Coping Skills and Education Group. He submitted letters and certificates related to these programs with his memorandum.

Given Black's childhood trauma, his rehabilitation efforts, and his role as a father, he argued that a sentence below the Guidelines range would "be sufficient, but no greater than necessary to achieve the purposes of sentencing." J.A. 62.

---

[1] These children are now adults. But Black also has two young children with his common law wife, both of whom he helped raise before his arrest in this case.

2:16-cr-00054-DCN    Date Filed 04/26/22    Entry Number 730    Page 5 of 10

C.

At the sentencing hearing, the district court adopted the presentence investigation report's factual findings. It then heard from the government, K.S., and Black. The government asked for a sentence on the upper end of the Guidelines range. Black's counsel elaborated on the sentencing memorandum, discussing Black's childhood, his drug addiction, his rehabilitation efforts, and his remorse. Counsel again requested a downward variance.

When Black spoke, he apologized "to the Court, to the police officers that arrested [him], [and] to the community," and said "that [he] allowed [his] addiction to take control of [him]." J.A. 180. He said, "I got two kids out there, and it's been 19 months already that I ain't seen them. And they got to grow up now without me for awhile." *Id.* He continued, "I don't want my daughters to go out there and go through the situation that [K.S.] went through. I just apologize." J.A. 181.

After hearing the government's response to Black's presentation, which pushed back on Black's assertion that addiction motivated his offense, the district court analyzed the statutory sentencing factors. It emphasized Black's violence against K.S. and his criminal history, noting "[h]e's offense level three, he's been around the block, he's 45 years old when this was going around, he . . . didn't learn his lesson by then, he's not going to learn." J.A. 183.

As for Black's mitigation evidence, the district court addressed only his claim that addiction drove his crimes. It said it viewed his "drug addiction" as "an excuse as opposed to a condition," observing that Black's prior drug convictions were for marijuana, and it

had "yet to see a marijuana addict do this kind of thing." J.A. 184. The court also suggested it didn't "make any sense" that someone who was "drug addled" could be so "successful" in this conspiracy. J.A. 183–84.

Ultimately, the district court sentenced Black to 240 months in prison with a lifetime of supervised release. The court imposed the mandatory and standard supervised-release conditions. It also ordered—without explanation—the eleven special conditions the probation office recommended in Black's presentence investigation report.[2]

This appeal followed.

## II.

Black raises several issues on appeal. Among them, he contends his sentence is procedurally unreasonable because the district court failed to address his nonfrivolous mitigation evidence. We agree, so we vacate Black's sentence and remand for resentencing.

Given our disposition, we decline to reach Black's other arguments. In broad strokes, he claims that the district court failed to address objections to the presentence investigation report, that it procedurally erred by imposing the eleven special supervised-

---

[2] After the district court issued an order on the proper base offense level for Black's codefendants, Black moved for resentencing, believing the order altered his offense level, too. The court granted Black's motion. After another hearing, it issued the same sentence. The court later clarified that its original order didn't apply to defendants who—like Black—trafficked minors. Some issues Black raises on appeal stem from his second sentencing hearing. But we don't reach those claims, so we find it unnecessary to unpack that complicated posture here.

release conditions without an adequate explanation, and that some of those conditions are unconstitutional.  Black may raise these issues with the district court on remand.  Our decision creates a blank slate for Black to assert his objections to the presentence report (if he so chooses) and for the court to explain the need for special supervised-release conditions.  Black may also press any constitutional concerns with those conditions at that time.

## A.

We review all sentences for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Sentences must be both procedurally and substantively reasonable.  *Id.*  A district court commits procedural error if it, among other things, "fail[s] to consider the § 3553(a) factors . . . or fail[s] to adequately explain the chosen sentence."  *Id.*  We'll vacate a procedurally unreasonable sentence unless the district court's error was harmless. *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020).

A district court commits procedural error when it fails to address a defendant's nonfrivolous mitigation arguments.  *See, e.g.*, *id.* at 244; *United States v. Ross*, 912 F.3d 740, 744–45 (4th Cir. 2019).  At the very least, a district court must "put on the record its consideration of . . . [a defendant's] non-frivolous arguments for a lower sentence [and] explain its rejection of those arguments."  *United States v. Webb*, 965 F.3d 262, 272 (4th Cir. 2020).   When a court fails to give "specific attention" to such evidence, we can only "guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence."

*United States v. Blue*, 877 F.3d 513, 521 (4th Cir. 2017) (cleaned up).  This we've rightly declined to do.

## B.

The district court gave no indication at sentencing that it considered Black's mitigation evidence.  So its explanation of Black's sentence doesn't "allow for meaningful appellate review."  *Lewis*, 958 F.3d at 243 (quoting *Gall*, 552 U.S. at 50).  True, the court discussed why it wasn't moved by Black's argument that addiction motivated his crimes.  But this wasn't the "central thesis" of his mitigation case.  *See id.* at 245 (finding procedural error where the district court "discussed and discredited the two letters describing Lewis as a hardworking family man" but didn't "address separately the central thesis of Lewis'[s] argument, that his role as a working father should be considered" (cleaned up)).

The district court neglected swaths of evidence about Black's family history, mental health, paternal role, and rehabilitation efforts.  The court's failure to even acknowledge this evidence on the record is procedural error.  *See, e.g.*, *id.*; *Webb*, 965 F.3d at 271.

The government's arguments are unavailing.  It submits that "a sentencing judge may reject without discussion 'stock [mitigation] arguments' that are made as a matter of routine" and claims Black's evidence is of that sort.  Appellee's Br. at 28 (quoting *United States v. Lewis*, 494 F. App'x 372, 374 (4th Cir. 2012) (per curiam)).  We disagree.

Regrettably, it's true that many criminal defendants have experienced childhood traumas, suffer from various mental health and addiction issues, and have children that must grow up without them while they serve time.  But sentencing courts are charged with conducting individualized assessments in each case to account for the boundless array of

circumstances that might have informed a defendant's poor choices.  *Cf. Gall*, 552 U.S. at 50 (requiring district judges to "make an individualized assessment based on the facts presented").

Black's mitigation evidence exceeded mere platitudes about a troubled childhood. As we've discussed, his sentencing memorandum and his counsel's presentation were comprehensive.  And we won't trivialize Black's experiences by calling them "stock" or "routine."

Nor are we confident that the district court's error was harmless.  "To establish harmless error, the government bears the burden of demonstrating that the district court's explicit consideration of the defendant's arguments would not have affected the sentence imposed."  *Lewis*, 958 F.3d at 245 (cleaned up).  The government can't meet that burden here, where "nothing in the record explicitly indicates that [the district court] would have imposed the same sentence regardless of whether it [expressly] considered any specific mitigation factors."  *United States v. Patterson*, 957 F.3d 426, 440 (4th Cir. 2020) (rejecting the government's claim of harmless error even under the more deferential standards we apply to revocation sentences).

What's more, Black contested factors on which the district court expressly relied. For example, Black argued his criminal history score substantially overstated his past crimes, which he says were low-level and consistent with drug addiction.  But without acknowledging this argument, the district court insisted Black's category III label meant "he's been around the block," and if he hasn't "learn[ed] his lesson by [now], he's not going to learn."  J.A. 183.  On this record, we can't know whether the district court's view

of Black's criminal history would change if it were to consider his mitigation arguments, or how that might affect his sentence.

It may well be that, on remand, the district court decides the same sentence is appropriate. But absent express consideration of Black's mitigation evidence, we can't "say with any fair assurance" that will be the case. *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010) (cleaned up). We therefore vacate the district court's sentence and remand for resentencing.

*VACATED AND REMANDED*